UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAGEED AKRAWI, #223957,

    Plaintiff,

v.

JOHN REMILLET AND BARBARA SAMPSON,

    Defendants.

NO. 2:10-CV-13234

HON. GEORGE CARAM STEEH

MAG. MICHAEL HLUCHANIUK

---

Daniel E. Manville (P39731)
Attorney for Plaintiff
P. O. Box 20321
Ferndale, MI  48220
(248) 890-4720

John L. Thurber (P44989)
Attorney for Defendants
Michigan Department of Attorney General
Corrections Division
P. O. Box 30217
Lansing, MI  48909
(517) 335-7021

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    Defendants John Remillet and Barbara Sampson, by counsel, pursuant to Fed. R. Civ. P. 56(b), move the Court to enter an Order granting summary judgment in their favor, based upon the grounds set forth in the accompanying brief.

Pursuant to E.D. Mich. LR 7.1(a) the Defendants sought Akrawi's counsel's concurrence in this motion on November 18, 2010. Akrawi's counsel did not concur in this motion.

        Respectfully submitted,

        Michael A. Cox
        Attorney General


        */s/ John L. Thurber*_____
        JOHN L. THURBER (P44989)
        Assistant Attorney General
        Attorneys for Defendants
        Corrections Division
        P. O. Box 30217
        Lansing, MI 48909
        (517) 335-7021
        thurberj@michigan.gov
        [P44989]

Dated:  November 24, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAGEED AKRAWI, #223957,

    Plaintiff,

v

JOHN REMILLET AND BARBARA SAMPSON,

    Defendants.

NO. 2:10-CV-13234

HON. GEORGE CARAM STEEH

MAG. MICHAEL HLUCHANIUK

---

Daniel E. Manville (P39731)
Attorney for Plaintiff
P. O. Box 20321
Ferndale, MI  48220
(248) 890-4720

John L. Thurber (P44989)
Attorney for Defendants
Michigan Department of Attorney General
Corrections Division
P. O. Box 30217
Lansing, MI  48909
(517) 335-7021

---

# BRIEF IN SUPPORT OF
# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Michael A. Cox
        Attorney General

        John L. Thurber
        Assistant Attorney General
        Corrections Division
        P. O. Box 30217
        Lansing, MI 48909
        (517) 335-7021
        thurberj@michigan.gov

Dated:  November 24, 2010        [P#44989]

**CONCISE STATEMENT OF ISSUES PRESENTED**

I. **In deciding whether to grant a preliminary injunction the Court looks to four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent an injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting the injunction. Akrawi has not satisfied any of those factors. Under these circumstances should this court deny Akrawi's request for injunctive relief?**

II. **28 U.S.C. § 1367(c)(3) permits this Court to decline supplemental jurisdiction if it dismisses the claims over which it has original jurisdiction. If this Court dismisses Akrawi's Federal claims, the only remaining claim will be under State law. Assuming this Court dismisses Akrawi's Federal claims, should this Court dismiss his State law claims without prejudice?**

III. **Michigan law provides that a judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority. As the Parole Board Chairperson, Sampson is the highest appointive executive official of the Parole Board. Is Sampson entitled to immunity from Akrawi's claims of false arrest and false imprisonment?**

IV. **A claim of false arrest or false imprisonment cannot be sustained if the arrest was legal. Remillet's "arrest" of Akrawi was legal because Akrawi had no right to be released from parole. Should this Court dismiss Akrawi's claims of false arrest and false imprisonment?**

V. **Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. In order to state a claim for a due process violation Akrawi must establish that he had a liberty interest in parole. The Sixth Circuit has consistently held that Michigan's statutory parole scheme does not create a liberty interest in parole. Should this Court find that the Defendants are entitled to summary judgment as to Akrawi's liberty interest claims?**

VI. **Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. In order to state a claim for a due process violation Akrawi must establish that he had a liberty interest in parole. The Sixth Circuit has consistently held that Michigan's statutory parole scheme does not create a liberty interest in parole. Should this Court find that the Defendants are entitled to summary judgment as to Akrawi's due process claims?**

**VII.** Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. In order to state a claim for a violation of the Fourth Amendment Akrawi must show that he was arrested and that the Defendants lacked probable cause to detain him. The Defendants had probable cause to detain him because Akrawi was on parole. Should this Court find that the Defendants are entitled to summary judgment as to Akrawi's Fourth Amendment claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Odom v. Wayne County*, 482 Mich. 459 (2008)

*People v. Holder*, 438 Mich. 169 (2009)

*People v. Gregorczyk*, 178 Mich. App. 1 (1989)

*People v Young,* 206 Mich. App. 144 (1994)

*Ross v. Consumers Power Company*, 420 Mich. 567 (1984)

*Sweeton v Brown,* 27 F.3d 1162 (6th Cir. 1994)

MCL 691.1407(5)

**STATEMENT OF FACTS**

In 1991, a jury found Rageed Akrawi guilty of conspiracy to deliver and manufacture more than 650 grams of cocaine.[1]  Akrawi received a sentence of life without the possibility parole.  The Michigan Legislature subsequently amended the aforementioned statute and reduced Akrawi's sentence to life with the possibility of parole.

The Michigan Parole Board paroled Akrawi on December 2, 2008 (Exhibit 1) to a four year term of parole.  Since Akrawi received a life sentence Michigan law requires that he serve a parole term of four years.  M.C.L. 791.234(8)(d) provides:

> A parole granted under subsection (7) shall be for a period of not less than 4 years and subject to the usual rules pertaining to paroles granted by the parole board. A parole granted under subsection (7) is not valid until the transcript of the record is filed with the attorney general whose certification of receipt of the transcript shall be returnable to the office of the parole board within 5 days. Except for medical records protected under section 2157 of the revised judicature act of 1961, 1961 PA 236, MCL 600.2157, the file of a prisoner granted a parole under subsection (7) is a public record.

Due to a clerical error, the Parole Board did not file the transcript with the Attorney General's Office until July 20, 2010.  Accordingly, Akrawi was not even legally on parole from December 2, 2008, until July 20, 2010.

Additionally, the Michigan Department of Corrections' Policy Directive (PD) 06.05.104, ¶ DD (Exhibit 2) provides that "If a prisoner serving a life sentence is granted parole, the parole period shall not be less than four years."  Finally, Attachment A to Operating Procedure (OP) 06.05.135 FOA (Exhibit 3) provides that "If a prisoner serving a life sentence, the parole period shall be for <u>not less than four years</u>."

On December 14, 2009, Charlie Barber, Akrawi's Parole Agent, submitted a Parole Action Request (PAR) to the Parole Board (Exhibit 4).  Barber requested that Akrawi be

---

[1] M.C.L. 333.7401(2)(a)(1).

1

discharged from parole early. Defendant John Remillet, Barber's supervisor, mistakenly approved the PAR and forwarded it on to the Parole Board. The Parole Board mistakenly acted on the PAR. As noted above, Akrawi was not eligible for an early discharge from parole because he had only served approximately one year of a mandatory four year term of parole. Two Parole Board members, Paul Condino on February 26, 2010, and Charles Brown on March 10, 2010, mistakenly signed off on the PAR.

Defendant Barbara Sampson's signature appears on a document dated March 19, 2010, that is entitled Parole and Commutation Board Order for Discharge from Sentence (Exhibit 5). Ms. Sampson, the Chairperson of the Parole Board, did not personally sign the Order for Discharge from Sentence. The signature on that document was an electronic signature affixed to all such Orders. A Parole Officer delivered the Order to Akrawi on March 26, 2010.

In late June or early July 2010 the Parole Board discovered that it did not have a signed copy of the transcript of Akrawi's public hearing. Assistant Attorney General James Long signed the transcript on July 20, 2010. On July 20, 2010, Ms. Sampson recognized that the failure to file the transcript meant that Akrawi was not legally on parole. At the same time, Ms. Sampson realized that the Parole Board had mistakenly signed off on an early parole in violation of M.C.L. 791.234(8)(d). Ms. Sampson immediately ordered that Akrawi be returned to parole supervision on July 20, 2010 (Exhibit 6). Akrawi is currently on parole and is allowed to travel out of state to service ATM machines. Moreover, Akrawi is on the lowest level of parole supervision. Akrawi only has to report to his Parole Agent by telephone.

In his Complaint [D/E #1], Akrawi requests injunctive relief and money damages. First, Akrawi asks this Court to order the Parole Board to release him on parole. Second, Akrawi

2

asserts State law claims of false imprisonment and false arrest. Finally, Akrawi asserts claims under the Fourth and Fourteenth Amendments. None of Akrawi's claims have any merit.

## ARGUMENT

I. **In deciding whether to grant a preliminary injunction the Court looks to four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent an injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting the injunction. Akrawi has not satisfied any of those factors. Under these circumstances this Court should deny Akrawi's request for injunctive relief.**

Akrawi requests this Court to order the Parole Board to discharge him from parole. This Court should deny Akrawi's request and grant the Defendants' summary judgment on this issue. The Sixth Circuit has held that: When considering a motion for preliminary injunction, the district court should consider four factors: (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met. Moreover, a District Court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.[2]

### A. Likelihood of Success on the Merits

Akrawi cannot show that he has any likelihood of success on the merits. M.C.L. 791.234(8)(d) makes it absolutely clear that Akrawi could not be paroled until he served at least four years on parole. He did not serve four years on parole. Ms. Sampson concedes that the Parole Board made a mistake. However, that mistake does not override State law. If this Court

---

[2] *Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003).

3

did grant Akrawi's request for injunctive relief it would be forcing the Parole Board to violate State law.

Akrawi relies on the Michigan Supreme Court's decision in *People v. Holder* to support his argument.[3] *Holder* is inapplicable to this case. In *Holder*, the Parole Board released Holder on parole in April 2004. The Parole Board discharged Holder on early parole on July 22, 2005. The police subsequently concluded an investigation against Holder on March 1, 2006. Holder then pleaded guilty in January 2007 to a new crime. The Michigan Department of Corrections' (MDOC) presentence investigation report prepared on February 26, 2007, stated that Holder was not on parole. The MDOC then sent two notices to Holder in May 2007 informing him that his parole discharge had been rescinded. In January 2008, the MDOC indicated to the sentencing judge that Holder's discharge had been cancelled and that Holder had been on parole when he committed his new crimes. Relying on the MDOC's representations, the Circuit Court issued an amended judgment of sentence.

The Court held that "Once parole has been granted, it may be rescinded for cause if a parole violation has been proven by a preponderance of the evidence. Moreover, the DOC possesses the statutory authority to rescind a parole order before a prisoner leaves prison and to amend an existing order of parole."[4] Ultimately, the Court held that the MDOC had no authority to cancel or revoke a parole discharge once the prisoner receives a certificate of discharge. *Holder* is easily distinguishable from the instant case. The reason *Holder* does not apply to this case is that, unlike in *Holder*, the Parole Board had <u>no authority to release Akrawi early from parole</u>. The Parole Board validly discharged Holder from parole and then tried to put him back on parole. In this case, State law required Akrawi to serve four years on parole. According to

---

[3] *People v. Holder*, 438 Mich. 169 (2009).
[4] *People v. Holder*, 438 Mich. at 173 (2009).

State law, Akrawi was not eligible for an early discharge from parole. The Parole Board made a mistake. That mistake does not mean that the Parole Board can violate State law.

Akrawi also relies on the Supreme Court's holding in *People v. Gregorczyk*.[5] The Court of Appeals later held that *Gregorczyk* was limited to its facts.[6]

The case that is on point is *People v. Young*.[7] In *Young*, Mr. Young was convicted of Armed Robbery. The Circuit Court sentenced Young to six to fifteen years in prison on July 14, 1983. The Parole Board paroled him on September 15, 1989, to a two year term of parole which expired on September 15, 1991. On April 25, 1991, Young was convicted of another crime and received a term of probation. On September 9, 1991, Young committed Breaking and Entering while still on parole. The Court of Appeals concluded that the Parole Board "inexplicably" discharged Young from parole.[8] The Parole Board should not have paroled Young because he committed a new crime while on parole. As in this case, the Parole Board admitted that it mistakenly discharged Young from parole early. The Court concluded that "Because Young did not faithfully perform all the conditions and obligations of his parole for the period fixed in the order (here two years), the Department of Corrections' discharge of Young's parole was in violation of M.C.L. 791.242; M.S.A. 28.2312."[9] The Court held "Because the parole discharge was in violation of a statute, and therefore illegal, the trial court could properly set aside that parole discharge."[10] The situation in the *Young* case is almost identical to this case. Here, the

---

[5] *People v. Gregorczyk*, 178 Mich. App. 1 (1989).
[6] *People v. Young*, 206 Mich. App. 144, 151 (1994) (reversed on other grounds by *People v. Young*, 220 Mich. App. 420 (1996)).
[7] *People v. Young*, 206 Mich. App. 144 (1994).
[8] *People v. Young*, 206 Mich. App. at 148.
[9] *People v. Young*, 206 Mich. App. at 150.
[10] *People v. Young*, 206 Mich. App. at 152.

5

Parole Board discharged Akrawi early in violation of a state statute as was the case in *Young*. Accordingly, this Court should reach the same conclusion.

Since the Parole Board acted in violation of a State law, Akrawi has no chance of success on the merits of his injunctive relief claim.

### B. Whether the Movant Would Suffer Irreparable Injury Absent an Injunction

Akrawi will not suffer an irreparable injury absent an injunction. As noted above, Akrawi had no right to an early discharge. He cannot be harmed by being in parole because he is statutorily required to be on parole until December 2012.

### C. Whether Granting the Injunction Would Cause Substantial Harm to Others

Granting an injunction would cause substantial harm to the People of the State of Michigan because the Court would be requiring the Parole Board to violate State law. Additionally, the Court would be releasing an individual into the community without parole supervision that the Legislature specifically said should be on parole supervision for four years.

### D. Whether the Public Interest Would be Served by Granting the Injunction

Granting the injunction would not serve the public interest because an injunction would require the Parole Board to violate State law and would release a convicted felon who should be on a four year parole in the community without any supervision.

**II.     28 U.S.C. §1367(c)(3) permits this Court to decline supplemental jurisdiction if it dismisses the claims over which it has original jurisdiction.  If this Court dismisses Akrawi's Federal claims, the only remaining claims will be under State law.  Assuming this Court dismisses Akrawi's Federal claims, this Court should dismiss his State law claims without prejudice.**

In his Complaint Akrawi maintains that he is entitled to damages pursuant to State law.

Pursuant to 28 U.S.C. §1367(c)(3), this Court may decline supplemental jurisdiction if "[T]he district court has dismissed all claims over which it has original jurisdiction."  If this Court dismisses Akrawi's Federal claims, it should dismiss his State law claims without prejudice

**III.    Michigan law provides that a judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.  As the Parole Board Chairperson, Sampson is the highest appointive executive official of the Parole Board.  Thus, Sampson is entitled to immunity from Akrawi's claims of false arrest and false imprisonment.**

Akrawi brought tort law claims under State law for false arrest and false imprisonment against Sampson [D/E #1, ¶ 29, 38, and 39].  If this Court decides not to dismiss Akrawi's State law claims without prejudice, Sampson is entitled to summary judgment as to those claims.

Michigan law provides that the highest appointive executive official of all levels of government is immune from tort liability.[11]  As the Chairperson of the Parole Board, is the highest appointive official of the Parole Board.  Consequently, pursuant to MCL 691.1407(5) she is entitled to absolute immunity from Akrawi's State law tort claims.

---

[11] M.C.L. 691.1407(5).

**IV.     A claim of false arrest or false imprisonment cannot be sustained if the arrest was legal. Remillet's "arrest" of Akrawi was legal because Akrawi had no right to be released from parole. Therefore this Court should dismiss Akrawi's claims of false arrest and false imprisonment.**

Akrawi brought tort law claims under State law for false arrest and false imprisonment against Remillet [D/E #1, ¶ 29, 38, and 39]. Unlike Sampson, Remillet as a supervisor in the MDOC is not entitled to absolute immunity under M.C.L. 691.1407(5).

Remillet ordered Akrawi to return to the parole office and to sign an acknowledgement that his early discharge had been rescinded on July 20, 2010 (Exhibit 6).

The Michigan Supreme Court has held that "[A] claim of false arrest or false imprisonment cannot be sustained if the arrest was legal."[12] Even assuming *arguendo* that Remillet "arrested" Akrawi when he ordered him to come to the parole office, Akrawi cannot state a claim because the "arrest" was legal. Again, Akrawi was not even legally on parole on July 20, 2010, because the Parole Board had no ability to discharge him early, so Remillet had a right to "arrest" him. If this Court finds that Sampson is not entitled to absolute immunity under State law, then Sampson submits that she is entitled to summary judgment for the same reasons that Remillet is entitled to summary judgment.

Remillet is also entitled to immunity under State law. Again, Sampson asserts that she too is entitled to immunity for the same reasons that Remillet is entitled to immunity. Akrawi pleaded two intentional torts, false arrest and false imprisonment. Under Michigan law, the Supreme Court has held that if a plaintiff pleads an intentional tort the defendant is entitled to governmental immunity by showing the following:

>   (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
>   (b) the acts were undertaken in good faith, or were not undertaken with malice, and

---

[12] *Odom v. Wayne County*, 482 Mich. 459, 481 (2008).

8

(c) the acts were discretionary, as opposed to ministerial.[13]

Remillet satisfies all three elements of the *Ross* test.[14] First, there can be no dispute that his actions, telling Akrawi to return to the parole office and asking him to sign a form, were undertaken in the course of his employment. Second, there is no doubt that he acted in good faith. The test for good faith is a subjective test.[15] Subjectively, Remillet believed that his actions were appropriate because Akrawi's early discharge was illegal. Third, Remillet's actions were discretionary rather than ministerial. Remillet made a discretionary decision to request Akrawi to return to the parole office and sign the July 21, 2010 memorandum. Thus, Remillet is entitled to immunity under State law. If this Court finds Sampson is not entitled to absolute immunity, she submits that she is entitled to governmental immunity under *Ross*.

**V.  Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. In order to state a claim for a due process violation Akrawi must establish that he had a liberty interest in parole. The Sixth Circuit has consistently held that Michigan's statutory parole scheme does not create a liberty interest in parole. Accordingly, this Court should find that the Defendants are entitled to summary judgment as to Akrawi's liberty interest claims.**

Akrawi alleges in his Complaint that he had a liberty interest in being on parole [D/E #1, ¶34-36]. This Court should dismiss Akrawi's liberty interest claim under the Fourteenth Amendment based on qualified immunity. Akrawi also sets forth a due process claim in his Complaint [D/E #1, ¶34-36]. The Defendants recognize that the liberty interest and due process claims are almost identical. Thus, the analysis in this section and section VI are almost identical.

Government officials are entitled to qualified immunity from civil damages unless their conduct "[V]iolate[s] clearly established statutory or constitutional rights of which a reasonable

---

[13] *Odom v. Wayne County*, 482 Mich. at 480.
[14] *Ross v. Consumers Power Company*, 420 Mich. 567 (1984).
[15] *Odom v. Wayne County*, 482 Mich. at 481-82.

9

person would have known."[16] The Supreme Court applies a two-part test in evaluating whether a government official is entitled to qualified immunity.[17] First, this Court must determine whether Akrawi has shown a violation of a constitutional right. Second, Akrawi must show the right was clearly established. The burden is on Akrawi to show that the Defendants are not entitled to qualified immunity.[18] The Supreme Court altered the *Saucier* test in 2009 and held that courts do not have to adhere to the rigid two step analysis set forth in *Saucier*.[19] Now, a court may answer the question of whether a right was clearly established first. While *Pearson* altered the order in which courts may consider a question of qualified immunity, the general framework of *Saucier* remains intact. The Sixth Circuit has held that:[20]

> For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances.

Under the circumstances of this case, the Defendants assert that Akrawi cannot carry his burden.

Akrawi cannot carry his burden because the Sixth Circuit has held that Michigan's statutory parole system does not create a liberty interest in parole.[21] Furthermore, the Michigan Supreme Court has held that the Michigan parole system does not create a liberty interest in parole.[22] Consequently, since Akrawi had no liberty interest in parole, the Defendants could not have violated his constitutional rights. Thus, they are entitled to qualified immunity.

Moreover, Since Akrawi had no liberty interest in being granted parole the Defendants could not have violated a clearly established right.

---

[16] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983).
[17] *Saucier v. Katz*, 533 U.S. 194, 201 (2003).
[18] *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).
[19] *Pearson v. Callahan*, ___ U.S. ___; 172 L. Ed. 2d 565; 129 S. Ct. 808 (2009).
[20] *Saylor v. Board of Education*, 118 F.3d 507, 517 (6th Cir. 1997).
[21] *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (*en banc*).
[22] *Glover v. Michigan Parole Board*, 460 Mich. 511 (1999).

**VI.    Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known. In order to state a claim for a due process violation Akrawi must establish that he had a liberty interest in parole. The Sixth Circuit has consistently held that Michigan's statutory parole scheme does not create a liberty interest in parole. Accordingly, this Court should find that the Defendants are entitled to summary judgment as to Akrawi's due process claims.**

Akrawi alleges in his Complaint that he had a liberty interest in being on parole [D/E #1, ¶34-36]. This Court should dismiss Akrawi's liberty interest claim under the Procedural Due Process Clause of the Fourteenth Amendment based on qualified immunity.

For Akrawi to establish a procedural due process violation, he must show that: (1) the Defendants deprived him of a protected liberty or property interest; and (2) that the deprivation occurred without the requisite due process of law.[23] Akrawi cannot satisfy either prong of the test.

As noted above, Akrawi has no inherent right to be conditionally released on parole.[24] The mere presence of a parole system by itself does not give rise to a constitutionally protected liberty interest.[25] In the absence of a liberty interest Akrawi cannot state a claim under the Procedural Due Process Clause of the Fourteenth Amendment. Therefore, the Defendants are entitled to qualified immunity.

Akrawi cites *Morrisey v. Brewer* to support his claim.[26] *Morrisey* is inapplicable to this case. In *Morrisey*, the Supreme Court held that a parolee is entitled to a hearing prior to the revocation of parole. The Parole Board never revoked Akrawi's parole. Moreover, the Parole

---

[23] *Club Italia Soccer & Sports Organization, Inc. v. Charter Township of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006).
[24] *Sweeton v. Brown*, 27 F.3d at 1164-65; *Glover v. Michigan Parole Board*, 460 Mich. 511 (1999).
[25] *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).
[26] *Morrisey v. Brewer*, 408 U.S. 471, 480-82 (9172).

11

Board never initiated parole revocation proceedings.  Therefore, *Morrisey* has no impact on the instant case.

Even if this court does determine that Akrawi had a liberty interest in parole, the Defendants are still entitled to qualified immunity because they provided him with notice.  On July 21, 2010, Akrawi signed a memorandum acknowledging his receipt of the Notice of Review of Discharge Action (Exhibit 6).  Under the circumstances of this case, that was sufficient process to satisfy the Due Process clause of the Fourteenth Amendment.

**VII.    Government officials performing discretionary functions are entitled to qualified immunity from civil damages unless their conduct violates clearly established constitutional rights of which a reasonable person would have known.  In order t o state a claim for a violation of the Fourth Amendment Akrawi must show that he was arrested and that the Defendants lacked probable cause to detain him.  The Defendants had probable cause to detain him because Akrawi was on parole.  Accordingly, this Court should find that the Defendants are entitled to summary judgment as to Akrawi's Fourth Amendment claims.**

Akrawi alleges that the Defendants falsely arrested him and falsely imprisoned him in violation of the Fourth Amendment.  Specifically, Akrawi alleges that having to return to the parole office to sign Exhibit 6 constituted a false arrest and false imprisonment.  Akrawi's arguments are without merit.

In order to set forth false arrest and false imprisonment claims under the Fourth Amendment, Akrawi must show that the Defendants lacked probable cause to arrest him.[27]  The Sixth Circuit has held that "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed."[28]  Again, assuming *arguendo* that the Defendants arrested him, Akrawi's claims for false arrest and false

---

[27] *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009).
[28] *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2002).

12

imprisonment must fail because the Defendants had probable cause to ask Akrawi to return to the parole office and sign Exhibit 6.

Sampson discovered on July 20, 2010, that Condino and Brown had mistakenly signed off on Akrawi's early parole. At that time, Brown and Condino's actions were in violation of M.C.L. 791.234(8)(d). As set forth above, M.C.L. 791.234(8)(d) required Akrawi to remain on parole for four years. Consequently, the Defendants had probable cause to have him return to his parole office to sign off on Exhibit 6 because they had a reasonable belief that Akrawi was in the community without any parole supervision. Accordingly, the Defendants could not have violated Akrawi's rights under the Fourth Amendment. Therefore, they are entitled to qualified immunity.

## CONCLUSION AND RELIEF SOUGHT

This Court should dismiss Akrawi's injunctive and monetary claims against the Defendants.

                Respectfully submitted,

                Michael A. Cox
                Attorney General

                */s/ John L. Thurber*
                JOHN L. THURBER (P44989)
                Assistant Attorney General
                Attorneys for Defendants
                Corrections Division
                P. O. Box 30217
                Lansing, MI 48909
                (517) 335-7021
                thurberj@michigan.gov
                [P#44989]

Dated: November 24, 2010

---

**PROOF OF SERVICE**

I hereby certify that on November 24, 2010, the foregoing paper was presented and uploaded to the United States District Court ECF System which will send notification of such filing to the attorneys of record listed herein and I hereby certify that a copy of this same document(s) was mailed by US Postal Service to any involved non-ECF participant.

                */s/John L. Thurber (P44989)*
                Assistant Attorney General
                Attorney for Defendants